IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| Michael Whetstone, <br> James Whetstone, & <br> Alton Whetstone, <br>     Plaintiffs, <br><br> v. <br><br> Unidentified Officer #1, individually, <br> Officer Randy Rice, individually, <br> Unidentified Officer #2, individually, <br> Officer Dan Harris, individually, <br> Unidentified Officer #3, individually, <br>     Defendants. | Case No. _____ |

## **PLAINTIFFS' ORIGINAL COMPLAINT**

This case involves excessive force in executing a search warrant of the property located at 413 NW 4th St, Dumas, Texas 79029 (hereinafter "the property" or "the Whetstone Junk Yard"), on or about August 11, 2023.

The excessive force by the individual officers involved gives rise to the following causes of action:

| Count | Type of Claim | Plaintiff | Defendant(s) |
|---|---|---|---|
| 1 | Excessive force | Michael Whetstone | Unidentified Officer #1 of the Randall County Sheriff's Office |
| 2 | Excessive force | Michael Whetstone | Officer Randy Rice of the Randall County Sheriff's Office |
| 3 | Excessive force | Michael Whetstone | Unidentified Officer #2 of the Randall County Sheriff's Office |

| 4 | Excessive force | James Whetstone | Officer Dan Harris of the Randall County Sheriff's Office |
| 5 | Excessive force | Alton Whetstone | Officer Dan Harris of the Randall County Sheriff's Office |
| 6 | Excessive force | Alton Whetstone | Unidentified Officer #3 of the Dumas Police Department |

## PARTIES

1. Plaintiff Michael Whetstone is a natural-born person and citizen of the State of Texas.

2. Plaintiff James Whetstone is a natural-born person and citizen of the State of Texas.

3. Plaintiff Alton Whetstone is a natural-born person and citizen of the State of Texas.

4. Defendant Unidentified Officer #1 is a natural-born, unidentified person employed by the Randall County Sheriff's Office at all relevant times.

5. Defendant Officer Randy Rice (hereinafter "Defendant Rice") is a natural born person who was employed as an officer with the Randall County Sheriff's Office at all relevant times.

6. Defendant Unidentified Officer #2 is a natural-born, unidentified person employed by the Randall County Sheriff's Office at all relevant times.

7. Defendant Officer Dan Harris (hereinafter "Defendant Harris") is a natural born person who was employed as an officer with the Randall County Sheriff's Office at all relevant times.

8. Defendant Unidentified Officer #3 is a natural-born, unidentified person employed by the City of Dumas Police Department at all relevant times.

## JURISDICTION

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## VENUE

10. Venue is proper in accordance with 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims occurred in this venue and Defendants reside in this venue.

## CONDITIONS PRECEDENT

11. All conditions precedent have been performed or have occurred.

## GENERALLY APPLICABLE FACTS

12. The Whetstone Junk Yard is a property in Dumas, Texas.

13. The Whetstone Junk Yard is a salvage yard on which members of the Whetstone family also live.

14. On or about August 11, 2023, the Dumas Police Department obtained a search warrant for the Whetstone Junk Yard.

15. Later that day, also on or about August 11, 2023, Defendants collectively executed the search warrant.

16. The search warrant execution (hereinafter "the raid") involved no fewer than five law enforcement agencies, two armored trucks, a helicopter, and approximately 30 law enforcement officers.

17. The armored trucks involved in the raid are depicted below:





18.     The officers involved in the raid were dressed in full tactical gear, including body armor, helmets, riot shields, and assault rifles.

19.     Throughout much of the raid, officers had riot shields engaged and weapons drawn, as depicted below:





20. At all relevant times, Plaintiffs were lawfully on the property.

21. As of August 11, 2023, Plaintiff Michael Whetstone was 80 years old, living on the property.

22. As of August 11, 2023, Plaintiff Michael Whetstone suffered from a significant hearing impairment.

23. As of August 11, 2023, Plaintiff James Whetstone was 60 years old, living on the property.

24. As of August 11, 2023, Plaintiff James Whetstone was physically and legally disabled.

25. As of August 11, 2023, Plaintiff Alton Whetstone was 57 years old, living on the property.

26. As of August 11, 2023, Plaintiff Alton Whetstone was physically and legally disabled.

27. At all relevant times, all Defendants were acting under color of law as law enforcement officers within the State of Texas.

**CAUSES OF ACTION**

28. Plaintiffs incorporate all of the above-pleaded facts into all counts pleaded below.

<u>Count 1: Plaintiff Michael Whetstone v. Defendant Unidentified Officer #1 (excessive force)</u>

29. During the raid, Plaintiff Michael Whetstone drove down to one end of the property at an extremely low rate of speed.

30. Plaintiff Michael Whetstone then stopped and put his hands up as he was closed in upon by multiple armed officers with weapons drawn and shields engaged, with one such officer yelling words to the effect of, "I will f****** kill you." This moment is depicted below:



31. At this point in time, Plaintiff Michael Whetstone was surrounded by no fewer than six armed and shielded/protected law enforcement officers and two law enforcement vehicles, such that there was no way a reasonable officer would have been in fear nor could a reasonable officer have believed Plaintiff Michael Whetstone was capable of fleeing.

32. Despite being stopped with his hands raised and visible to officers, and despite clearly being elderly, Plaintiff Michael Whetstone was ripped out of the vehicle by Defendant Unidentified

Officer #1 and dragged along the ground by his arm, as depicted below:[1]



33. The actions of Defendant Unidentified Officer #1 amounted to excessive force, as the actions of Defendant Unidentified Officer #1 caused Plaintiff Michael Whetstone injuries to his knees, arms, back, shoulders, neck, and head. The force used by Defendant Unidentified Officer #1 was clearly excessive, as Plaintiff Michael Whetstone was clearly elderly with his hands raised. The excessiveness was clearly unreasonable, as a reasonable officer would have immediately recognized that Plaintiff Michael Whetstone was elderly and not a threat, and such a reasonable officer would have refrained from ripping Plaintiff Michael Whetstone out of the vehicle and dragging him on the ground. Given the extraordinary law enforcement presence, along with Plaintiff Michael Whetstone's obvious age and the fact that he was clearly giving himself up to police, no reasonable law enforcement officer could have concluded that the force used by Defendant Unidentified Officer #1 was constitutionally permissible.

34. For the reasons set forth above, Defendant Unidentified Officer #1 committed excessive force against Plaintiff Michael Whetstone in violation of the Fourth Amendment of the United States Constitution, enforceable through 42 U.S.C. § 1983.

---

[1] Faces of the Defendant-officers are redacted in this pleading but will be provided during discovery. The officers will be identified as named Defendants once known.

Count 2: Plaintiff Michael Whetstone v. Defendant Rice (excessive force)

35. Defendant Rice took custody of Plaintiff Michael Whetstone after he was ripped from the vehicle by Defendant Unidentified Officer #1.

36. As Defendant Rice became involved, Plaintiff Michael Whetstone was screaming in pain and yelling.

37. Despite the screams of Plaintiff Michael Whetstone, Defendant Rice hoisted Plaintiff Michael Whetstone by his arms and dragged him upright along the ground, as depicted below:



(Pictured above) Defendant Rice is on the left.



(Pictured above) Defendant Rice is on the right.

38. As Plaintiff Michael Whetstone was screaming, unable to move due to pain and injuries, Defendant Rice yelled at Plaintiff Michael Whetstone words to the effect of, "Get your f****** legs moving!"

39. Defendant Rice's use of force was so excessive that a supervisor—Lieutenant Cole Nuckols of the Randall County Sheriff's Office—intervened and said, "Easy, guys. [physically intervened] Easy."

40. The actions of Defendant Rice amounted to excessive force, as the actions of Defendant Rice caused Plaintiff Michael Whetstone injuries to his knees, arms, back, shoulders, neck, and head. The force used by Defendant Rice was clearly excessive, as Plaintiff Michael Whetstone was clearly elderly and unable to move on his own power after having been ripped from the vehicle moments earlier. The excessiveness was clearly unreasonable, as a reasonable officer would have immediately recognized that Plaintiff Michael Whetstone was elderly and in need of medical attention, and such a reasonable officer would have refrained from dragging Plaintiff Michael Whetstone. Given the extraordinary law enforcement presence, along with Plaintiff Michael Whetstone's obvious age, physical injuries, and

screams in pain, no reasonable law enforcement officer could have concluded that the force used by Defendant Rice was constitutionally permissible.

41. For the reasons set forth above, Defendant Rice committed excessive force against Plaintiff Michael Whetstone in violation of the Fourth Amendment of the United States Constitution, enforceable through 42 U.S.C. § 1983.

Count 3: Plaintiff Michael Whetstone v. Defendant Unidentified Officer #2 (excessive force)

42. Defendant Unidentified Officer #2 took custody of Plaintiff Michael Whetstone after he was ripped from the vehicle by Defendant Unidentified Officer #1.

43. As Defendant Unidentified Officer #2 became involved, Plaintiff Michael Whetstone was screaming in pain and yelling.

44. Despite the screams of Plaintiff Michael Whetstone, Defendant Unidentified Officer #2 hoisted Plaintiff Michael Whetstone by his arms and dragged him upright along the ground, as depicted below:



(Pictured above) Defendant Unidentified Officer #2 is on the right.



(Pictured above) Defendant Unidentified Officer #2 is on the left.

45. Defendant Unidentified Officer #2's use of force was so excessive that a supervisor—Lieutenant Cole Nuckols of the Randall County Sheriff's Office—intervened and said, "Easy, guys. [physically intervened] Easy."

46. The actions of Defendant Unidentified Officer #2 amounted to excessive force, as the actions of Defendant Unidentified Officer #2 caused Plaintiff Michael Whetstone injuries to his knees, arms, back, shoulders, neck, and head. The force used by Defendant Unidentified Officer #2 was clearly excessive, as Plaintiff Michael Whetstone was clearly elderly and unable to move on his own power after having been ripped from the vehicle moments earlier. The excessiveness was clearly unreasonable, as a reasonable officer would have immediately recognized that Plaintiff Michael Whetstone was elderly and in need of medical attention, and such a reasonable officer would have refrained from dragging Plaintiff Michael Whetstone. Given the extraordinary law enforcement presence, along with Plaintiff Michael Whetstone's obvious age, physical injuries, and screams in pain, no reasonable law enforcement officer could have concluded that the force used by Defendant Unidentified Officer #2 was constitutionally permissible.

47. Defendant Unidentified Officer #2 later acknowledged his actions and the injuries of Plaintiff Michael Whetstone by stating words to the effect of, "His whole elbow and s*** was busted up. He was bleeding all over Randy. [...] Well we were dragging him for a minute because he just wouldn't f****** stand up."

48. For the reasons set forth above, Defendant Unidentified Officer #2 committed excessive force against Plaintiff Michael Whetstone in violation of the Fourth Amendment of the United States Constitution, enforceable through 42 U.S.C. § 1983.

Count 4: Plaintiff James Whetstone v. Defendant Harris (excessive force)

49. During the raid, Plaintiff James Whetstone was detained in handcuffs by Defendants and other officers, as depicted below:



50. Defendants and other officers decided to move Plaintiff James Whetsone from one area of the property to another.

51. To accomplish this move, Defendant Harris escorted Plaintiff James Whetstone and Plaintiff Alton Whetstone while they were still in handcuffs, with hands restrained behind their backs.

52. When Plaintiff James Whetstone and Plaintiff Alton Whetstone were apparently not moving as quickly as desired by Defendant Harris, Defendant Harris said words to the effect of, "Walk faster."

53. Plaintiff Alton Whetstone then informed Defendant Harris that he was physically disabled, saying words to the effect of, "'I'm handicapped, man."

54. Defendant Harris responded by saying words to the effect of, "I'm going to throw you on the f****** ground if you don't do what I say."

55. Defendant Harris then kicked Plaintiff Alton Whetstone in the legs.

56. At this point, an altercation ensued. During the altercation, Plaintiff Alton Whetstone can be heard saying words to the effect of, "Hey, I'm crippled man, I'm handicapped," with Plaintiff James Whetstone immediately saying, "Me too, dude." Plaintiff Alton Whetstone also told Defendant Harris to "quit" in reference to Defendant Harris attempting to move them more quickly than they were physically able to move.

57. During the altercation, while Plaintiff James Whetstone was retrained with his hands behind his back, Defendant Harris used his elbow to strike Plaintiff James Whetstone in the head and ear.

58. The actions of Defendant Harris amounted to excessive force, as the actions of Defendant Harris caused Plaintiff James Whetstone injuries to his head and ear. The force used by Defendant Harris was clearly excessive, as Plaintiff James Whetstone was a senior citizen, physically disabled (as was made known to Defendant Harris), unarmed, and in handcuffs with his hands restrained behind his back. The excessiveness was clearly unreasonable, as a reasonable officer would have immediately recognized that Plaintiff James Whetstone was restrained and no threat to anyone, and such a reasonable officer would have refrained from striking Plaintiff James Whetstone while restrained. Given the extraordinary law enforcement

presence, Plaintiff James Whetstone's age and physical limitations, and the fact that Plaintiff James Whetstone was restrained, no reasonable law enforcement officer could have concluded that the force used by Defendant Harris was constitutionally permissible.

59. For the reasons set forth above, Defendant Harris committed excessive force against Plaintiff James Whetstone in violation of the Fourth Amendment of the United States Constitution, enforceable through 42 U.S.C. § 1983.

Count 5: Plaintiff Alton Whetstone v. Defendant Harris (excessive force)

60. During the raid, Plaintiff Alton Whetstone was detained in handcuffs by Defendants and other officers, as depicted below:



61. Defendants and other officers decided to move Plaintiff Alton Whetsone from one area of the property to another.

62. To accomplish this move, Defendant Harris escorted Plaintiff James Whetstone and Plaintiff Alton Whetstone while they were still in handcuffs, with hands restrained behind their backs.

63. When Plaintiff James Whetstone and Plaintiff Alton Whetstone were apparently not moving as quickly as desired by Defendant Harris, Defendant Harris said words to the effect of, "Walk faster."

64. Plaintiff Alton Whetstone then informed Defendant Harris that he was physically disabled, saying words to the effect of, "'I'm handicapped, man."

65. Defendant Harris responded by saying words to the effect of, "I'm going to throw you on the f****** ground if you don't do what I say."

66. Defendant Harris then kicked Plaintiff Alton Whetstone in the legs.

67. At this point, an altercation ensued. During the altercation, Plaintiff Alton Whetstone can be heard saying words to the effect of, "Hey, I'm crippled man, I'm handicapped," with Plaintiff James Whetstone immediately saying, "Me too, dude." Plaintiff Alton Whetstone also told Defendant Harris to "quit" in reference to Defendant Harris attempting to move them more quickly than they were physically able to move.

68. During the altercation, while Plaintiff Alton Whetstone was restrained with his hands behind his back, Defendant Harris kicked Plaintiff Alton Whetstone in the legs and struck him in his legs, torso, and head, driving Plaintiff Alton Whetstone into the ground.

69. The actions of Defendant Harris amounted to excessive force, as the actions of Defendant Harris caused Plaintiff Alton Whetstone injuries to his legs, knees, arms, back, shoulders, and head. The force used by Defendant Harris was clearly excessive, as Plaintiff Alton Whetstone was a senior citizen, physically disabled (as was made known to Defendant Harris), unarmed, and in handcuffs with his hands restrained behind his back. The excessiveness was clearly unreasonable, as a reasonable officer would have immediately recognized that Plaintiff Alton Whetstone was restrained and no threat to anyone, and such a reasonable officer would have refrained from striking Plaintiff Alton Whetstone while

       restrained. Given the extraordinary law enforcement presence, Plaintiff Alton Whetstone's age and physical limitations, and the fact that Plaintiff Alton Whetstone was restrained, no reasonable law enforcement officer could have concluded that the force used by Defendant Harris was constitutionally permissible.

70.    For the reasons set forth above, Defendant Harris committed excessive force against Plaintiff Alton Whetstone in violation of the Fourth Amendment of the United States Constitution, enforceable through 42 U.S.C. § 1983.

<u>Count 6: Plaintiff Alton Whetstone v. Defendant Unidentified Officer #3 (excessive force)</u>

71.    Defendant Unidentified Officer #3 intervened during the altercation with Plaintiff Alton Whetstone, Plaintiff James Whetstone, and Defendant Harris.

72.    After intervening, while Plaintiff Alton Whetstone was restrained with his hands behind his back, Defendant Unidentified Officer #3 repeatedly struck Plaintiff Alton Whetstone in his legs, knees, arms, back, shoulders, and head, both while Plaintiff Alton Whetstone was upright and while he was on the ground. At one point after being taken down to the ground, Plaintiff Alton Whetstone was able to stand up, at which point Defendant Unidentified Officer #3 again struck Plaintiff Alton Whetstone's legs, driving him back down into the ground.

73.    The actions of Defendant Unidentified Officer #3 amounted to excessive force, as the actions of Defendant Unidentified Officer #3 caused Plaintiff Alton Whetstone injuries to his legs, knees, arms, back, shoulders, and head. The force used by Defendant Unidentified Officer #3 was clearly excessive, as Plaintiff Alton Whetstone was a senior citizen, physically disabled (as was made known to Defendant Unidentified Officer #3), unarmed, and in handcuffs with his hands restrained behind his back. The excessiveness was clearly unreasonable, as a reasonable officer would have immediately recognized that Plaintiff Alton

Whetstone was restrained and no threat to anyone, and such a reasonable officer would have refrained from striking Plaintiff Alton Whetstone while restrained. Given the extraordinary law enforcement presence, Plaintiff Alton Whetstone's age and physical limitations, and the fact that Plaintiff Alton Whetstone was restrained, no reasonable law enforcement officer could have concluded that the force used by Defendant Unidentified Officer #3 was constitutionally permissible.

74. For the reasons set forth above, Defendant Unidentified Officer #3 committed excessive force against Plaintiff Alton Whetstone in violation of the Fourth Amendment of the United States Constitution, enforceable through 42 U.S.C. § 1983.

## DAMAGES

75. As a result of Defendants' actions, Plaintiffs suffered the following compensatory damages:

   a. Medical expenses in the past and in the future;

   b. Loss of earning capacity in the past and in the future;

   c. Physical pain and suffering in the past and in the future;

   d. Mental and emotional pain and anguish in the past and in the future;

   e. Loss of consortium in the past and in the future;

   f. Disfigurement in the past and in the future;

   g. Physical impairment in the past and in the future;

   h. Loss of companionship and society in the past and in the future;

   i. Inconvenience in the past and in the future;

   j. Loss of enjoyment of life in the past and in the future;

   k. Injury to reputation in the past and in the future; and

   l. Other pecuniary expenses.

76. The assessment of exemplary (punitive) damages is warranted against Defendants, as their actions were taken with reckless or callous indifference to Plaintiffs' federally protected rights..

## ATTORNEY FEES & COSTS

77. Plaintiffs request an award of attorney fees and litigation costs pursuant to 42 U.S.C. § 1988.

## JURY DEMAND

78. Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a jury trial.

## PRAYER FOR RELIEF

79. For these reasons, Plaintiffs request a judgment against Defendants for the following:

   a. Compensatory damages against Defendants, jointly and severally;

   b. Exemplary (punitive) damages against Defendants, jointly and severally;

   c. Attorney fees and litigation costs;

   d. Prejudgment and postjudgment interest to the fullest extent allowed by the law;

   e. Nominal damages of $1; and

   f. All other relief which may be just and proper under the circumstances.


Respectfully submitted,


/s/Ross A. Brennan
Cronauer Law, LLP
7500 Rialto Blvd, Bldg 1, Ste 250
Austin, TX 78735
512-733-5151
ross@cronauerlaw.com


/s/Blake Scott
Attorney Dean Boyd PLLC
4423 SW 45th Ave
Amarillo, TX 79109
806-242-3333
blake@deanboyd.com