UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| Michael Whetstone,<br>James Whetstone, &<br>Alton Whetstone,<br><br>Plaintiffs,<br><br>v.<br><br>Officer Charles Wheeler, individually,<br>Officer Randy Rice, individually,<br>Officer Jacob Cochran, individually,<br>Officer Dan Harris, individually,<br>Unidentified Officer #3, individually,<br>Officer Armando Adame, individually, &<br>Officer Colby Copeland, individually,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 2:25-cv-0050-Z-BV |

**DEFENDANTS' REPLY BRIEF TO PLAINTIFFS' BRIEF IN OPPOSITION TO <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

Sprouse Shrader Smith PLLC
Andrew R. Evans, SBN 00796519
andrew.evans@sprouselaw.com
Evan A. Johnson, SBN 24134463
evan.johnson@sprouselaw.com
701 S. Taylor, Suite 500
P. O. Box 15008
Amarillo, Texas 79105-5008
Tel: (806) 468-3300 / Fax: (806) 373-3454

**ATTORNEYS FOR DEFENDANTS SERGEANT RANDY RICE, SERGEANT DAN HARRIS, SERGEANT CHARLES WHEELER, DEPUTY JACOB COCHRAN, SERGEANT ARMANDO ADAME AND STAFF SERGEANT COLBY COPELAND**

# TABLE OF CONTENTS


Page

TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

SUMMARY OF REPLY ARGUMENT ........ 1

- I. The officers did not violate Plaintiffs' Fourth Amendment Rights ........ 1
  - A. Michael Whetstone ........ 4
    - i. Severity of Crime ........ 4
    - ii. Immediate Threat to Safety ........ 5
    - iii. Active Resistance and Attempted Evasion ........ 5
  - B. The Crane Threat was Real and Reasonable ........ 6
  - C. The Force Used was Reasonable and Proportionate ........ 7
    - i. Extraction from Vehicle (Wheeler) ........ 7
    - ii. Transport from Scene (Rice and Cochran) ........ 8
  - D. James and Alton Whetstone ........ 9
    - i. Severity of Crime ........ 10
    - ii. Immediate Threat to Safety ........ 10
    - iii. Active Resistance ........ 10
- II. Even if the Court finds Plaintiffs' Fourth Amendment rights were violated, Defendants are entitled to qualified immunity ........ 14

CONCLUSION ........ 20

PRAYER ........ 20

CERTIFICATE OF SERVICE ........ 21

# TABLE OF AUTHORITIES

## Cases

*Betts v. Brennan*,
22 F.4th 577 (5th Cir. 2022) ....................16, 17

*Brown v. Callahan*,
623 F.3d 249 (5th Cir. 2010) ....................14

*Buehler v. Dear*,
27 F.4th 969 (5th Cir. 2022) ....................5, 6

*Bustillos v. El Paso Cty. Hosp. Dist.*,
891 F.3d 214 (5th Cir. 2018) ....................14

*Byrd v. Cornelius*,
52 F.4th 265 (5th Cir. 2022) ....................1

*Escobar v. Montee*,
895 F.3d 387 (5th Cir. 2018) ....................9

*Fraire v. City of Arlington*,
957 F.2d 1268 (5th Cir. 1992) ....................9

*Galvan v. City of San Antonio*,
435 F. App'x 309 (5th Cir. 2010)....................13

*Graham v. Connor*,
490 U.S. 386 (1989)....................1, 2, 4, 7, 14, 17, 18

*Hale v. City of Biloxi*,
731 F. App'x 259 (5th Cir. 2018)....................19

*Hanks v. Rogers*,
853 F.3d 738 (5th Cir. 2017) ....................14

*Joseph ex rel. Est. of Joseph v. Bartlett*,
981 F.3d 319 (5th Cir. 2020) ....................18

*Malbrough v. Stelly*,
814 Fed. Appx. 798 (5th Cir. 2020)....................4

*Malley v. Briggs*,
475 U.S. 335 (1986)....................19

*Meadours v. Ermel*,
483 F.3d 417 (5th Cir. 2007) ....................................................................................9

*Morrow v. Meachum*,
917 F.3d 870 (5th Cir. 2009) ....................................................................................20

*Pasco ex rel. Pasco v. Knoblauch*,
566 F.3d 572 (5th Cir. 2009) ....................................................................................20

*Poole v. City of Shreveport*,
691 F.3d 624 (5th Cir. 2012) ....................................................................................13

*Ramirez v. Knoulton*,
542 F.3d 124 (5th Cir. 2008) ....................................................................................2, 13

*Ramirez v. Martinez*,
716 F.3d 369 (5th Cir. 2013) ....................................................................................15, 16

*Ryburn v. Huff*,
565 U.S. 469 (2012)....................................................................................................9

*Scott v. Harris*,
550 U.S. 372 (2007)....................................................................................................11

*Solis v. Serrett*,
31 F.4th 975 (5th Cir. 2022) ....................................................................................15, 17

*Tarver v. City of Edna*,
410 F.3d 745 (5th Cir. 2005) ....................................................................................9

*Terry v. Ohio*,
392 U.S. 1 (1968)........................................................................................................2

*Tucker v. City of Shreveport*,
998 F.3d 165 (5th Cir. 2021) ....................................................................................8, 17

*White v. Pauly*,
137 S. Ct. 548 (2017)..................................................................................................9

*Zarnow v. City of Wichita Falls*,
500 F.3d 401 (5th Cir. 2007) ....................................................................................9

**<u>Statutes</u>**

42 U.S.C. § 1983..........................................................................................................18

TO THE HONORABLE COURT:

COME NOW Sergeant Randy Rice ("Rice"), Sergeant Dan Harris ("Harris"), Sergeant Charles Wheeler ("Wheeler"), Deputy Jacob Cochran ("Cochran"), Sergeant Armando Adame ("Adame"), and Staff Sergeant Colby Copeland ("Copeland") each in their individual capacity as a Randall County Sheriff's Office officer (collectively "Defendants") and file this reply brief to Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment (ECF 40), as follows:

## SUMMARY OF REPLY ARGUMENT

Despite Plaintiffs' creative characterizations, the video evidence establishes that Defendants acted reasonably under rapidly evolving and dangerous circumstances. Plaintiffs Michael Whetstone ("Michael"), James Whetstone ("James"), and Alton Whetstone ("Alton"), (collectively, "Plaintiffs") ask this Court to second-guess split-second decisions made by officers executing a high-risk narcotics warrant on a sprawling junkyard containing multiple suspects, potential weapons, and tactical hazards. The officers' use of force to extract Michael from his vehicle after he drove toward them and refused commands to stop and exit, to quickly move Michael from an exposed area while a potentially armed suspect remained concealed in an elevated position, and to control James and Alton when they actively resisted escort by planting their feet, pushing back, and adopting aggressive postures during a high-risk tactical operation, was not unreasonable or a violation of clearly established law.

## I. The Officers Did Not Violate Plaintiffs' Fourth Amendment Rights.

Fourth Amendment excessive force claims are properly analyzed under an objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 388 (1989). The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight. *Byrd v. Cornelius*, 52 F.4th 265, 270 (5th Cir.

2022) (quoting *Terry v. Ohio*, 392 U.S. 1, 20-22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). This is an objective standard: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Ramirez v. Knoulton, 542 F.3d 124, 128-29* (5th Cir. 2008) (citations omitted).

"This test allows for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 129. The Court should "gauge the objective reasonableness of the force used by a law enforcement officer [by] balance[ing] the amount of force used against the need for force, paying careful attention to the facts and circumstances of each particular case." *Id.*

Here, the undisputed summary judgment evidence is that Defendants were executing a valid search warrant at a high-risk narcotics location with multiple agencies and approximately thirty officers. ECF 34 at App. 0001-0012, 0013-0015. Michael ignored repeated commands, entered his vehicle despite the massive law enforcement presence, drove toward officers, ignored a 40mm less-lethal round and flashbang, required a vehicle collision to stop him, and refused to exit the vehicle. ECF 34 at App. 0001-0012, 0019, 0020, 0021, 0022, 0027, 0028. Another suspect had fled into an elevated crane position while holding an unidentified object officers reasonably believed could be a weapon. ECF 34 at App. 0001-0012, 0019, 0020, 0021, 0022, 0026, 0027, 0028. Defendants used brief, targeted force without strikes, tasers, or impact weapons to extract Michael and move him from the exposed area. ECF 34 at App. 0001-0012, 0019, 0020, 0021, 0022. James and Alton, while handcuffed, refused commands to walk and planted their feet. ECF 34 at App. 0001-0012, 0020, 0021. Defendant Harris used only brief elbow strikes to maintain control after James and Alton physically resisted during a high-risk tactical operation. ECF 34 at App. 0001-0012, 0020, 0021; ECF 39 at App 32-33, 40-41.

Considering the totality of the circumstances and Plaintiffs' actions—Plaintiffs continuous disregard of officer commands, Michael using a vehicle to flee toward officers while an unknown suspect concealed himself on a crane with credible concerns he was armed, and James and Alton Whetstone actively resisting escort during a high-risk warrant execution—Defendants were justified in using force.

Plaintiffs claim Michael "committed no crime" and was "actively trying to surrender." ECF 40 at p. 1, 17. Multiple officers' body-camera videos tell a different story. ECF 34 at App. 0019, 0020, 0021, 0022. Michael ignored commands from multiple law enforcement agencies,[1] entered his vehicle despite a massive law enforcement presence with a helicopter overhead and officers broadcasting orders over a PA system, drove toward officers at a steady speed, ignored a 40mm less-lethal round fired at his vehicle, ignored a flashbang detonated near his door, and continued driving until Sergeant Harris executed a vehicle containment maneuver that stopped him by force. ECF 34 at App. 0001-0012, 0019, 0020, 0021, 0022, 0026, 0027, 0028. Only then, with his vehicle immobilized and surrounded by armed officers, did Michael raise his hands—while still refusing to exit the vehicle as commanded. ECF 34 at App. 0001-0012, 0019, 0020, 0021, 0022.

Plaintiffs characterize James and Alton as cooperative detainees who merely failed to "walk faster." ECF 40 at p. 25. Again, the evidence contradicts this sanitized version. The videos and Defendant Harris's report establish that both men actively resisted by planting their feet, pushing back against Harris, and physically confronting him. ECF 34 at App. 0001-0012, 0020, 0021, 0040. Alton drove his shoulder into Harris's chest. ECF 34 at App. 0001-0012, 0020,

[1] The Potter County Sheriff's Office Deputy Report completed by Sergeant Hooker notes "… we encountered a vehicle described as a red Chevrolet truck driving around the property. This vehicle was driven by a white male subject who intentionally and knowingly disregarded our presence and verbal commands to stop the vehicle." App. 0032. Sergeant Almanza stated "As we arrived we observed a male subject exit the shop. We gave the male subject several commands of police. We commanded the subject to put his hands in the air and walk to us. The [male] subject refused and walked to a truck." ECF 34 at App. 0034. Deputy Torres reported "Numerous commands to stop the vehicle was (sic) given to the male subject. But the male subject refused to comply with commands." App. 0035

0021, 0040. James turned toward Harris in an aggressive posture with chest puffed out and head cocked back. ECF 34 at App. 0001-0012, 0020, 0021, 0040. These were not passive detainees moving too slowly; they were actively resisting lawful commands while handcuffed during a high-risk operation.

Plaintiffs' version of the facts is not supported by clear video evidence.

Plaintiffs' factual narrative repeatedly conflicts with or omits critical facts clearly depicted in the body camera footage. Though generally courts consider the facts in the light most favorable to the non-movant at the summary judgment stage, the Fifth Circuit also recognizes that when the pleadings and testimony of the plaintiff are blatantly contradicted by the record, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Malbrough v. Stelly*, 814 Fed. Appx. 798, 802 (5th Cir. 2020).

**A. Michael Whetstone.**

**i. Severity of Crime.**

Plaintiffs claim Michael "committed no crime," but this misstates the legal standard and ignores the facts. ECF 40 at p. 1. First, whether Michael was ultimately charged is irrelevant to the *Graham* analysis, which focuses on what the officers reasonably believed *at the time*. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Second, Michael's conduct—ignoring commands from multiple agencies, driving toward officers during execution of a search warrant, refusing to stop despite less-lethal measures—provided reasonable grounds to believe he was obstructing or interfering with the warrant execution, evading detention, and potentially assaulting officers with a vehicle. ECF 34 at App. 0019, 0020, 0021, 0022.

Moreover, even accepting Plaintiffs' characterization of this as a "minor" crime, the other *Graham* factors overwhelmingly favor Defendants. *Id.*; ECF 40 at p. 17. The Fifth Circuit has

repeatedly held that even minor crimes can justify significant force when other factors are present. In *Buehler v. Dear*, the court concluded that officers did not violate the Fourth Amendment when they used takedowns to control a suspect who resisted arrest, even though the suspect was engaged in a minor offense; the court noted that such force was reasonable and consistent with established precedent. 27 F.4th 969 (5th Cir. 2022).

**ii. Immediate Threat to Safety.**

Plaintiffs dismiss the threat posed by Michael's vehicle, claiming he was driving at "an extremely low rate of speed" and had his "hands up." ECF 40 at p. 17, 9. This ignores that:

- Michael drove steadily toward officers despite repeated commands to stop;
- He ignored a 40mm less-lethal round striking his vehicle;
- He ignored a flashbang deployed at his door;
- Officers were forced to execute a vehicle containment maneuver, ramming his vehicle head-on to stop him;
- Even after being stopped, Michael refused to exit the vehicle; and
- The vehicle was never placed in park. ECF 34 at App. 0001-0012, 0019, 0020, 0021, 0022.

A suspect who drives toward officers, ignores multiple warnings and less-lethal measures, and requires a vehicle-to-vehicle collision to stop him poses an immediate threat. That Michael eventually raised his hands after being forcibly stopped does not retroactively eliminate the threat he posed moments earlier. ECF 34 at App. 0019, 0020, 0021, 0022.

**iii. Active Resistance and Attempted Evasion.**

Plaintiffs claim Michael was "not actively resisting nor attempting to evade by flight." ECF 40 at p. 18. This defies both common sense and the video record. ECF 34 at App. 0019, 0020, 0021, 0022, 0026, 0027, 0028. Michael's entire course of conduct, from entering the

vehicle to driving toward officers to refusing to stop despite less-lethal measures to refusing to exit even after being stopped, constitutes active evasion and resistance.

The Fifth Circuit has held that suspects who merely back away from officers are "actively resisting arrest." *Buehler v. Dear*, 27 F.4th 969, 984 (5th Cir. 2022). Michael did far more than back away; he used a vehicle to flee toward officers, requiring a collision to stop him. ECF 34 at App. 0019, 0020, 0021, 0022.

**B. The Crane Threat Was Real and Reasonable.**

Plaintiffs attempt to minimize the threat posed by Westyn Whetstone hiding on the crane with an unidentified object. Plaintiffs claim, "there is a genuine dispute of material fact as to whether the crane was even within the line of sight of the area where Michael was detained." ECF 40 at p. 20. This argument fails. First, Plaintiffs mischaracterize the "sniper" reference; the officer in the "sniper" position was simply in the turret or overwatch position—the opening in the ceiling of the BearCat where an officer stands and maintains observation of the tactical environment. ECF 40 at p. 19; ECF 34 at App. 0001-0012, 0019, 0020, 0021, 0022. This elevated vantage point provided a clear view of both the crane and the area where Michael was detained, confirming the crane was within the operational danger zone. ECF 34 at App. 0001-0012, 0019, 0020, 0021, 0022. Whether officers on the ground could directly see the crane is irrelevant because officers were in constant communication with the helicopter overhead, the Potter County team positioned near the crane, and the officer in the BearCat's overwatch position, all of whom had clear views of the threat. ECF 34 at App. 0001-0012, 0019, 0020, 0021, 0022, 0026, 0029-0039.

Plaintiffs further try to use hindsight to minimize the threat. Hindsight is irrelevant. The fact that the object in Westyn Whetstone's hand turned out to be a phone does not mean officers acted unreasonably in treating it as a potential weapon; officers cannot wait until shots are fired

to assess threats. Not every push or shove violates the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal citation and quotation marks omitted). Instead, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id* at 396-97 (internal citation and quotation marks omitted).

Plaintiffs' argument that "the crane was surrounded by police officers" supports Defendants. ECF 40 at p. 2. The fact that multiple law enforcement agencies were focused on this threat demonstrates how seriously law enforcement took the danger—not that the danger was nonexistent.

Officers' behavior after Michael's detention does not prove they were unconcerned about the crane threat. Once Michael was secured and moved from the exposed area, the tactical situation changed. ECF 34 at App. 0019, 0020, 0021, 0022. Officers could then safely operate in areas they could not access while Michael was actively evading, and a potentially armed suspect remained in an elevated position. ECF 34 at App. 0019, 0020, 0021, 0022.

The issue is not whether Defendants themselves were at immediate risk of being shot from the crane, but whether their tactical assessment, that they needed to quickly secure Michael and move him from an exposed area, was reasonable. It clearly was.

**C. The Force Used Was Reasonable and Proportionate.**

**i. Extraction from Vehicle (Wheeler).**

Michael refused to exit his vehicle despite commands. ECF 34 at App. 0001-0012, 0019, 0020, 0021, 0022. Officers conducting a quick vehicle assault acted reasonably in physically removing him after he drove toward them, ignored less-lethal measures, and refused to surrender. ECF 34 at App. 0001-0012, 0019, 0020, 0021, 0022. Defendant Wheeler pulled Michael from

the vehicle by his arms and shoulders—he did not strike him, tase him, or use any weapon; this was vehicle extraction under exigent circumstances. ECF 34 at App. 0001-0012, 0019, 0020, 0021, 0022.

**ii. Transport from Scene (Rice and Cochran).**

After extraction, Michael was handcuffed and needed to be moved from the exposed area near the vehicle. ECF 34 at App. 0001-0012, 0019, 0020, 0021, 0022. When Michael refused to walk, officers briefly lifted and moved him. ECF 34 at App. 0001-0012, 0019, 0020, 0021, 0022. Moreover, Lieutenant Nuckols's intervention does not establish excessive force; it shows only that he believed a more cautious approach was preferable once the immediate tactical urgency decreased as reasonable officers can differ on the appropriate level of force. *See Tucker v. City of Shreveport*, 998 F.3d 165 (5th Cir. 2021) (focusing on what officers reasonably perceived in the moment, without hindsight or video enhancements).

The force used by Defendants was not clearly excessive to the need. The video and evidence support the fact that Michael actively evaded arrest by driving toward officers despite repeated commands and less-lethal measures, refused to exit his vehicle after being forcibly stopped, and refused to walk once handcuffed, all while a potentially armed suspect remained concealed in an elevated tactical position creating an urgent need to move Michael from the exposed area. ECF 34 at App. 0001-0012, 0019, 0020, 0021, 0022, 0027, 0028.

The evidence is undisputed that Michael drove the pickup forward and toward the Defendant officers. ECF 40 at p.17; ECF 34 at App. 0001-0012, 0019, 0020, 0021, 0022, 0027, 0028. Officers were not required to wait for Michael to successfully evade the scene, for the suspect in the crane to reveal whether he was armed, or for James and Alton's physical resistance to escalate into assault before taking reasonable measures to maintain control and ensure safety.

When examining an excessive-force claim, the Court examines the totality of the circumstances and looks at the case ‘from the perspective of a reasonable officer on the scene, paying careful attention to the facts and circumstances of each particular case, and considering only the facts that were knowable to the officer at the time.” *Escobar v. Montee*, 895 F.3d 387, 394 (5th Cir. 2018); *White v. Pauly*, 137 S. Ct. 548, 550 (2017) (per curiam). Courts are careful to avoid “second-guessing a police officer’s assessment, made on the scene, of the danger presented by a particular situation.” *Ryburn v. Huff*, 565 U.S. 469, 477 (2012) (per curiam). If more than one police officer is involved, the Court evaluates each officer’s actions separately, to the extent possible. *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007).

Plaintiffs emphasize Michael’s advanced age and alleged hearing loss. ECF 40 at p. 2, 6, 22). But Michael’s age does not appear obvious in the videos, and officers could not know about his hearing issues. ECF 34 at App. 0019, 0020, 0021, 0022. More importantly, Michael’s conduct—not his age—dictated the force used. Officers used the minimum force necessary to affect his detention under dangerous circumstances. They did not strike him, tase him, pepper spray him or use any impact weapons. ECF 34 at App. 0001-0012, 0019, 0020, 0021, 0022.

Therefore, Plaintiff Michael has not met his burden to overcome Defendants’ assertion of qualified immunity because he has not produced evidence showing: (1) that the officers violated his constitutional rights; and (2) that the violation was objectively unreasonable under clearly established law at the time of the incident. *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007), citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992). If reasonable officers could disagree as to whether the claimant’s rights were violated, then the defendant is entitled to qualified immunity. *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005).

**D. James and Alton Whetstone.**

**i. Severity of Crime.**

Plaintiffs argue James and Alton "were not under arrest for any crime" at the time of the incident with Defendant Harris. ECF 40 at p. 24. This is a distinction without a difference as they were lawfully detained during execution of a search warrant at a high-risk narcotics location. ECF 34 at App. 0001-0012, 0013-0015, 0016-0018, 0020, 0021, 0022. Their subsequent charges for drug and firearm offenses confirm the dangerousness of the situation officers faced. ECF 39 at App. 34-39.

**ii. Immediate Threat to Safety.**

Plaintiffs claim James and Alton "did not pose an immediate threat" because they were handcuffed. ECF 40 at p. 25. Here, both men physically resisted Defendant Harris and posed immediate threats requiring force to control. ECF 34 at App. 0001-0012, 0020, 0021, 0040.

**iii. Active Resistance.**

Plaintiffs characterize James and Alton's conduct as merely "[n]ot following instructions... to walk faster." ECF 40 at p. 25. This minimizes their conduct. They:

- Planted their feet and refused to move;
- Pushed back against Harris;
- Required physical pushing to move at all;
- Alton drove his shoulder into Harris's chest; and
- James turned toward Harris in an aggressive, confrontational posture. ECF 34 at App. 0001-0012, 0020, 0021, 0040.

This is active resistance, not passive noncompliance.

While Plaintiffs correctly note that Defendant Copeland's body camera video is bouncing due to his running to assist, the video and still photographs undermine Plaintiffs' excessive force claims. ECF 40 at p. 26; ECF 34 at App. 0001-0012, 0020, 0040. Critically, neither the video nor

the still photographs show James or Alton ever being forced to the ground, placed on their knees, or subjected to any takedown maneuver. ECF 34 at App. 0020, 0040. The visual evidence confirms they remained on their feet throughout the encounter. ECF 34 at App. 0020, 0040. This is significant because Plaintiffs' declarations suggest they were subjected to prolonged, severe force—yet the objective video and photographic evidence show no such thing occurred. ECF 39 at App. 32-33, 40-41; ECF 34 at App. 0020, 0040.

Moreover, James claims Defendant Harris "kicked" Alton in the legs and struck Alton in multiple areas of his body. ECF 39 at App. 32-33. However, the still images from Copeland's body camera expressly refute these allegations—they show no kicking whatsoever. ECF 34 at App. 0020, 0040. The dust visible in the photographs resulted from James and Alton planting their feet and dragging them in resistance, not from any kicks by Harris. ECF 34 at App. 0020, 0040. The objective visual evidence thus contradicts Plaintiffs' self-serving declarations and confirms that Harris used only brief, controlled elbow strikes to address active physical resistance—not the prolonged beating Plaintiffs now describe. ECF 34 at App. 0020, 0040; ECF 39 at App. 32-33, 40-41. Where video evidence contradicts a plaintiff's version of events, the Court must credit the video. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

While Plaintiffs acknowledge Harris's body camera captures audio and Copeland's video, though partially obscured, they claim this creates a genuine factual dispute. ECF 40 at p. 26-27. It does not. Plaintiffs' self-serving declarations do not blatantly contradict the objective evidence: audio capturing their confrontational statements and physical sounds of resistance, Harris's detailed contemporaneous report, and Copeland's body camera footage showing the actual sequence of events. ECF 34 at App. 0020, 0040; ECF 39 at App. 32-33, 40-41. Both Plaintiffs agree they were elbowed in the head by Harris. ECF 39 at App. 32-33, 40-41.

Plaintiffs admit the critical facts: they were handcuffed during a high-risk warrant execution, Harris ordered them to walk faster, and they refused to comply. An altercation ensued. Their dispute centers on whether they physically resisted and whether the force was necessary—but these disputes are immaterial because the undisputed facts establish objective reasonableness: handcuffed detainees during a dangerous operation defied commands, verbally confronted the escorting officer, and prompted brief, targeted strikes in response. ECF 34 at App. 0020, 0040; ECF 39 at App. 32-33, 40-41.

Most telling, Copeland's body camera captures nearly the entire interaction from the moment Harris takes custody at 15:08:11. ECF 34 at App. 0020. Throughout this footage, Plaintiffs are never on the ground as they allege. ECF 34 at App. 0020. At 15:08:24, both Plaintiffs are visible facing Harris in a confrontational stance. ECF 34 at App. 0020. Copeland then turns toward the BearCat for a mere five seconds (15:08:25-15:08:30)—a brief interval during which the camera does not capture the Plaintiffs. ECF 34 at App. 0020. When Copeland's camera refocuses on the scene at 15:08:30, there is no indication that Plaintiffs were on the ground, nor any evidence consistent with them having just been on the ground moments before. ECF 34 at App. 0020. Critically, the video never shows Alton going to the ground, much less Harris "dragg[ing] [him] along, lifting [him] by the handcuffs with [his] arms behind [him]" as alleged. ECF 34 at App. 0020; ECF 39 at App. 40-41. The timeline makes this allegation physically impossible: such a sequence of events—Alton falling or being taken to the ground, then being dragged and lifted by his handcuffs—could not occur within a five-second window without leaving visible evidence immediately thereafter.

Overall, the force used by Defendants was not clearly excessive to the need. The video and evidence supports the fact that Michael actively evaded arrest by driving toward officers despite repeated commands and less-lethal measures, refused to exit his vehicle after being

forcibly stopped, and refused to walk once handcuffed, all while a potentially armed suspect remained concealed in an elevated tactical position creating an urgent need to move Michael from the exposed area; and that James and Alton actively resisted Defendant Harris by planting their feet, pushing back, and physically confronting him during escort in a high-risk tactical environment. The evidence is undisputed that Michael drove the pickup forward and toward the Defendant officers. Officers were not required to wait for Michael to successfully evade the scene, for the suspect in the crane to reveal whether he was armed, or for James and Alton's physical resistance to escalate into assault before taking reasonable measures to maintain control and ensure safety.

Additionally, the force used by Defendants was not objectively unreasonable. Plaintiffs ignore the objective standard set forth by the Fifth Circuit in analyzing excessive force cases, instead focusing solely on the officers' actions, beliefs, and purported justifications for using the force they applied.

However, the Fifth Circuit made clear that officers' subjective intent and motivation are immaterial when evaluating the objective reasonableness of the officers' actions. *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) ("This is an objective standard: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.").

In all of Plaintiffs' allegations of excess force, together or individually, the summary judgment evidence establishes that Defendants responded with "measured and ascending actions" that corresponded with each Plaintiff's refusal to comply with instructions, as well as Michael's resisting of detention and attempt to evade, and Alton and Jame's resisting escort after being handcuffed. See *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (quoting *Galvan v. City of San Antonio*, 435 F.App'x 309, 311 (5th Cir. 2010). In summary, the *Graham*

factors support the Defendants' use of force in effecting each Plaintiff's compliance. *Graham v. Conner*, 490 U.S. 386 (1989). Analysis of the above facts establishes that the officers' actions were objectively reasonable under the circumstances because each Plaintiff was resisting and posed an immediate threat to the safety of the officers, himself in Michael's case, and others. There is no genuine issue of material fact and the summary judgment evidence establishes that Defendants' use of force was reasonable under the circumstances.

## II. Even if the Court Finds Plaintiffs' Fourth Amendment Rights Were Violated, Defendants Are Entitled to Qualified Immunity.

A qualified immunity defense alters the usual summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law. *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).

"The Supreme Court does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. It is the plaintiff's burden to find a case in her favor that does not define the law at a high level of generality." *Bustillos v. El Paso Cty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (citations and quotations omitted).

Here, Plaintiffs offer no case that should have put Officers Wheeler, Rice, Cochran, Harris, Adame, and Copeland on notice that their actions violated the Fourth Amendment. Plaintiffs fail to offer such a case because there is no "clearly established" law that officers violate the Constitution by physically extracting from a vehicle a suspect who drove toward them during a high-risk warrant execution, ignored less-lethal measures, required a vehicle collision to

stop, and refused to exit; by quickly moving that suspect from an exposed area while a potentially armed individual remained concealed in an elevated position; or by delivering brief distractionary strikes to handcuffed detainees who actively resist escort commands by planting their feet, pushing back against officers, and adopting physically aggressive postures during a tactical operation.

Plaintiffs attempt to distinguish *Solis v. Serrett*, 31 F.4th 975 (5th Cir. 2022), by characterizing it as involving "a lone officer late at night during a traffic stop." ECF 40 at p. 2, 18-19. But this misses *Solis's* central holding: officers may use reasonable force, including takedowns, when suspects resist by backing away, acting uncooperatively, or displaying hostility—even for minor offenses. *Id.* Michael did not merely back away or act uncooperatively. He used a vehicle to evade officers during a high-risk warrant execution. ECF 34 at App. 0001-0012, 0019, 0020, 0021, 0022. Additionally, two officers, Sims and Serrett, participated in the *Solis* incident; contrary to Plaintiff's assertion, this was not a "lone' officer scenario. *Solis v. Serrett*, 31 F.4th 975, 979 (5th Cir. 2022). The Fifth Circuit Court of Appeals found that neither officer's conduct was objectively unreasonable or violative of Solis's constitutional rights; the court observed that Solis sustained only de minimis injuries, and the force employed—a brief takedown, arm restraint, and handcuffing—was proportional to her resistance, and the court further ruled that the officers were entitled to qualified immunity, as no clearly established constitutional right was violated under these circumstances. *Id.* at If the force in *Solis* was reasonable, the force here—used on a suspect who posed a far greater threat—was unquestionably reasonable.

Plaintiffs rely heavily on *Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013), but that case is readily distinguishable. In *Ramirez*, the defendant tased the plaintiff twice—the second time while the plaintiff was already handcuffed and on the ground. *Id.* Here, Defendant Harris merely

delivered controlled distractionary strikes with his elbow to prevent assault and maintain control during a dynamic confrontation. ECF 34 at App. 0001-0012, 0020, 0021, 0040. These were brief, targeted interventions—not prolonged applications of force after the threat subsided or tasings like in *Ramirez*. ECF 34 at App. 0021.

Moreover, *Ramirez* involved a business owner at his own property who verbally objected to officers' presence. *Id.* at 382. James and Alton, on the other hand, were apprehended during a high-risk narcotics raid at a location known for the presence of weapons, highlighting the dangerous nature of the setting. ECF 34 at App. 0001-0012, 0013-0015.

In *Betts v. Brennan*, 22 F.4th 577 (5th Cir. 2022), the Fifth Circuit held that officers could tase a suspect who was "confrontational, repeatedly contested why he was stopped, ignored the officer's commands, disputed the officer's authority, accused the officer of lying, and batted away his hand." The Court found qualified immunity applied even though the plaintiff was "mostly compliant." *Id.*

James and Alton's conduct was strikingly similar: confrontational, ignoring commands, verbally challenging Harris, and physically resisting. ECF 34 at App. 0001-0012, 0020, 0021, 0040. If the tasing in *Betts* did not violate the Fourth Amendment, the brief elbow strikes here certainly did not.

Regarding Michael Whetstone, the specific question is whether it was clearly established on August 11, 2023, that officers violate the Fourth Amendment by physically removing from a vehicle and then quickly moving from an exposed area, a suspect who drove toward them during a high-risk warrant execution, ignored less-lethal measures, required a vehicle collision to stop, refused to exit the vehicle, and refused to walk—all while another suspect was concealed in an elevated position with an unidentified object.

Plaintiffs cannot point to any case clearly establishing this specific proposition. *Graham* provides general factors; it does not answer this specific question. *Graham v. Conner*, 490 U.S. 386 (1989). And as *Betts*, *Tucker*, and *Solis* demonstrate, the Fifth Circuit has repeatedly found qualified immunity applies in factually similar situations. *See Betts v. Brennan*, 22 F.4th 577 (5th Cir. 2022); *Tucker v. City of Shreveport*, 998 F.3d 165 (5th Cir. 2021); *Solis v. Serrett*, 31 F.4th 975 (5th Cir. 2022).

Plaintiffs' reliance on *Graham's* general framework and factually dissimilar cases does not satisfy their burden to identify precedent that clearly established the unconstitutionality of Defendants' specific conduct under these specific circumstances. 490 U.S. 386 (1989). The Fifth Circuit's recent decisions in *Solis*, *Betts*, and *Tucker* confirm that the law was not clearly established such that reasonable officers in Defendants' positions would have known their actions were unlawful. *See Betts v. Brennan*, 22 F.4th 577 (5th Cir. 2022); *Tucker v. City of Shreveport*, 998 F.3d 165 (5th Cir. 2021); *Solis v. Serrett*, 31 F.4th 975 (5th Cir. 2022).

For the bystander liability claims against Defendants Adame and Copeland, because no excessive force occurred, there was no clearly established duty to intervene. Even if excessive force had occurred, Plaintiffs cannot identify any case clearly establishing that officers providing tactical security during a dynamic warrant execution must abandon their posts to intervene in brief physical encounters that supervisors are already monitoring.

Regarding James and Alton Whetstone, Plaintiffs offer no case that should have put Officer Harris on notice that his actions violated the Fourth Amendment. Plaintiffs fail to offer such a case because there is no "clearly established" law that officers violate the Constitution by delivering brief distractionary strikes to handcuffed detainees who actively resist escort commands by planting their feet, pushing back against officers, and adopting physically aggressive postures during a tactical operation.

The specific question is whether it was clearly established on August 11, 2023, that officers violate the Fourth Amendment by delivering brief elbow strikes to handcuffed detainees who, during a high-risk warrant execution, refuse to follow escort commands, plant their feet, push back against officers, and adopt aggressive postures.

The factual context of the other case Plaintiffs cite is even further removed. *See Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 326–27, 335–36 (5th Cir. 2020) (finding officers' conduct unreasonable where a submissive claimant, in the midst of a mental-health crisis, died after multiple officers dogpiled, brutally beat, and repeatedly tasered him). *Joseph* affirmed that "[o]fficers engage in excessive force when they physically strike a suspect who is not resisting arrest." *Id.* at 342. By contrast, the officers here never struck Michael, who was actively resisting. In *Joseph*, the Fifth Circuit addressed excessive force claims brought under 42 U.S.C. § 1983 against police officers involved in an encounter with Kendole Joseph, who suffered from untreated paranoid schizophrenia and died two days after the encounter. *Id.* Kendole Joseph, who had untreated paranoid schizophrenia, was reported acting strangely near a school and when approached by officers, Joseph fled into a convenience store and jumped behind the counter. *Id.* Multiple officers pursued Joseph, who assumed a fetal position on the ground. *Id.* Two officers inflicted 26 blunt-force injuries and tased Joseph twice. *Id.* Joseph died two days later from his injuries. *Id.* The court applied the *Graham* factors (severity of crime, threat posed, active resistance) to determine the reasonableness of force used, finding that viewing facts favorably to the plaintiffs, Joseph was not suspected of any crime, posed no threat, and was not actively resisting. 490 U.S. 386, 388 (1989).

Here, Michael was *not* standing still—he was actively fleeing in a vehicle toward officers during execution of a search warrant at a high-risk location. ECF 34 at App. 0001-0012, 0019, 0020, 0021, 0022. He ignored repeated commands, less-lethal measures, and required a vehicle

collision to stop him. *Id.* Unlike the plaintiff in *Joseph*, Michael posed an immediate and ongoing threat through his vehicular evasion. 490 U.S. 386. Moreover, Defendants did not strike Michael with batons or weapons; they physically removed him from the vehicle and moved him from an exposed area using the minimum force necessary. ECF 34 at App. 0001-0012, 0019, 0020, 0021, 0022. The stark factual differences between a person in a metal health crisis and a suspect actively fleeing in a vehicle toward officers during a warrant execution render *Joseph* inapplicable. Because of the extreme factual distinctions, this case cannot be considered controlling or persuasive, and has no impact on Defendant Wheeler, Rice, and Cochran's qualified immunity.

Considering the totality of the circumstances of the search warrant operation and Plaintiffs' actions—Plaintiffs continuously ignoring officer commands, Michael Whetstone using the vehicle to flee toward officers, an unknown suspect concealed in the crane with credible concerns he was armed, James and Alton Whetstone actively resisting escort by planting their feet and physically pushing back against officers, Alton driving his shoulder into Defendant Harris's chest, and James adopting an aggressive confrontational posture during a high-risk warrant execution—Defendants were justified in using force.

Even if reasonable officers could disagree about the appropriate level of force, that disagreement confirms Defendants' entitlement to qualified immunity. The law protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 343 (1986). Defendants' conduct falls well within the protected zone of reasonable disagreement.

Plaintiffs did not carry their burden to identify case law that clearly establishes that Defendants' actions were unreasonable based on the facts of their situation. *Hale v. City of Biloxi*, 731 F.App'x 259, 264 (5th Cir. 2018). For these reasons, it cannot be said that the law

was clearly established at the time such that every reasonable officer would know that the force employed by each Defendant under those circumstances would violate the Fourth Amendment. *See Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2009); *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 582 (5th Cir. 2009). Therefore, Defendants are entitled to summary judgment on the issue of qualified immunity.

## CONCLUSION

Because Plaintiffs did not sustain any constitutional injuries, Plaintiffs have no claim for excessive force against Defendants. Defendants are entitled to qualified immunity because they used objectively reasonable force and did not violate clearly established law.

## PRAYER

WHEREFORE, Defendants Sergeant Randy Rice, Sergeant Dan Harris, Sergeant Charles Wheeler, Deputy Jacob Cochran, Sergeant Armando Adame, and Staff Sergeant Colby Copeland, pray for judgment that Plaintiffs Michael Whetstone, James Whetstone, and Alton Whetstone, take nothing, for costs, and for general relief.

Respectfully submitted,

SPROUSE SHRADER SMITH PLLC
Andrew R. Evans, SBN 00796519
andrew.evans@sprouselaw.com
Evan A. Johnson, SBN 24134463
evan.johnson@sprouselaw.com
701 S. Taylor, Suite 500
P. O. Box 15008
Amarillo, Texas 79105-5008
Tel: (806) 468-3300 / Fax: (806) 373-3454

/s/ *Andrew R. Evans*
Andrew R. Evans

**ATTORNEYS FOR DEFENDANTS SERGEANT RANDY RICE, SERGEANT DAN HARRIS, SERGEANT CHARLES WHEELER, DEPUTY JACOB COCHRAN, SERGEANT ARMANDO ADAME AND STAFF SERGEANT COLBY COPELAND**

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2025, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system will send a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

**ATTORNEYS FOR PLAINTIFFS**

Ross A. Brennan
Cronauer Law, LLP
7500 Rialto Blvd., Bldg. 1, Suite 250
Austin, Texas 78735
Tel: (512) 733-5151
ross@cronauerlaw.com

Blake Scott
Dean Boyd PLLC
4423 SW 45th Avenue
Amarillo, Texas 79109
Tel: (806) 242-3333
blake@deanboyd.com

/s/ *Andrew R. Evans*
Andrew R. Evans